OPINION OF THE COURT
Leslie Crocker Snyder, J.
This court is presented with what appears to be an issue of first impression in New York State. Can a State prosecutor who has investigated a defendant under joint State and Federal auspices, resulting in a New York State indictment for a violation of this State’s narcotics laws, elect to pursue Federal rather than State forfeiture proceedings? If allowed, would this impermissibly subvert CPLR article 13-A which, unlike Federal forfeiture law, specifically exempts reasonable attorneys’ fees from forfeiture proceedings?
This court finds that as long as New York State’s constitutional and financial interests are safeguarded by the prosecution, the People may elect to proceed under either State or Federal forfeiture laws. In the case at bar, the court finds that New York State has no effective jurisdiction under CPLR article 13-A over the bank accounts seized and therefore the People are not required to provide funds for defense counsel under article I, § 6 of the NY Constitution. However, where a defendant’s forfeited property is located within New York State, the People have a duty under the New York State Constitution to obtain a reasonable portion of these forfeited funds for the specific purpose of allowing a defendant to obtain counsel of choice and to satisfy New York State’s other interests.
FACTS PRESENTED
In May 1989, the United States Attorney’s office for the Southern District of New York authorized agents from the Drug Enforcement Administration (DEA) to commence an investigation into a narcotics organization allegedly headed by the defendant operating in both New York State and New Jersey. Six months later, the office of the Special Narcotics Prosecutor for the City of New York joined in this investigation and obtained electronic and telephonic eavesdropping warrants from a New York State Supreme Court Justice.
On April 12, 1991, the defendant was arrested pursuant to this joint Federal and State investigation by agents of the DEA Task Force. He was indicted for conspiracy in the second degree, criminal sale of a controlled substance in the first *643 degree and related offenses by a Grand Jury sitting in New York County.
In an effort to seize alleged drug proceeds in the defendant’s name and in the name of his ex-wife Carmen Martinez, the People initiated forfeiture proceedings under 21 USC § 881. On April 15, 1991, a Magistrate of the United States District Court of the District of Puerto Rico issued an in rem seizure warrant for various bank accounts in Puerto Rico. Upon execution of the warrant, two certificates of deposit in the names of Angel Martinez and Carmen Rosa Martinez were seized in the sum of $250,000.
On April 23, 1991, an in rem seizure warrant was issued by a Magistrate of the Southern District of New York. Pursuant to this warrant, three cashier’s checks were seized from National Westminster Bank in Bronx County totaling $114,423.25 in the name of Carmen Martinez.
Following the defendant’s arrest on April 12, Carmen Martinez retained the law firm of Meyer and Greenfield to represent the defendant. On counsel’s instructions, Ms. Martinez directed Citibank in Puerto Rico to wire approximately $125,000 to counsel’s New York account. In addition, Ms. Martinez gave defense counsel a cashier’s check for $84,229.42 from her National Westminster Bank account, which was deposited by defense counsel into their business account.
Pursuant to the forfeiture proceedings under 21 USC § 881, the funds from both accounts were seized prior to the transfers and the initial retainer of $209,229.42 was not received by the firm of Meyer and Greenfield. Although defendant has not claimed the funds in the name of his ex-wife Carmen Martinez as his own, he contends that he needs all of these funds to compensate counsel of his choice and that he has a right to obtain them for this purpose.
Counsel has moved this court to prohibit the People from forfeiting the defendant’s assets — specifically the $209,229.42 initial retainer — under Federal forfeiture laws and to require the prosecution to proceed under CPLR article 13-A which exempts reasonable attorneys’ fees from forfeiture.[1]
CONCLUSIONS OF LAW
NEW YORK STATE FORFEITURE V FEDERAL FORFEITURE
The New York State Legislature enacted CPLR article 13-A *644 to "take the profit out of crime”. (1984 McKinney’s Session Laws of NY, at 3627-3628.) To that end, the statute provides for the institution of an action which is "civil, remedial and in personam in nature”. (Morgenthau v Citisource, Inc., 68 NY2d 211, 217 [1986].) Under article 13-A, a civil action may be commenced by the appropriate claiming authority against a criminal defendant to recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, an instrumentality of a crime or the real property instrumentality of a crime. (CPLR 1311 [1].)
The in personam nature of article 13-A allows the prosecution to forfeit any of a defendant’s assets which are shown to be proceeds or substituted proceeds of a crime once the amount of gain from the criminal activity is established. In addition, the prosecution may obtain an in personam judgment against a noncriminal defendant[2] by proving the noncriminal defendant was aware or should have been aware that the property coming into his or her possession was the proceeds of a crime.
Although the forfeiture proceedings are stayed during the pendency of the related criminal matter, the People may move to preserve the defendant’s property preconviction. Under CPLR 1312, the four basic provisional remedies of attachment, injunction, receivership and notice of pendency are available in all actions to recover property or for a money judgment. A court may grant an application for such a remedy when it appears that the prosecution will prevail on the issue of forfeiture and a failure to enter the order may result in the property being destroyed, removed from the court’s jurisdiction, or otherwise be unavailable for forfeiture.
To the extent that a criminal defendant has property within New York State, the Legislature’s goal of "taking the profit out of crime” can be met. While a forfeiture action is an in personam action directed against the defendant, the prosecution can preserve the defendant’s property pending the outcome of the criminal proceedings. This prevents a defendant from removing, altering, diminishing or impairing in-State property which will revert to the People upon a criminal conviction and concomitant civil forfeiture judgment.
*645 However, the People’s ability to forfeit out-of-State property is severely hampered by the in personam nature of New York’s forfeiture laws. The People cannot secure a defendant’s out-of-State assets preconviction because no final order can be issued by a New York court until the New York State criminal proceedings are resolved. Any provisional remedy obtained by the People to secure the defendant’s property would not be a final order which another State must honor under the Full Faith and Credit Clause of the US Constitution. Therefore, the prosecution must await the outcome of the criminal proceedings, file suit in a New York State civil court to obtain a judgment against the defendant, and then file that final order in the out-of-State forum. The out-of-State forum will then review the order of the New York State court to determine if it should be given full faith and credit. Only after the foreign jurisdiction honors the order of the New York courts can the People move to forfeit the out-of-State property.
The practical effect of such a lengthy, laborious, time-consuming and expensive process is to provide the criminal defendant with sufficient notice and opportunity to secrete the out-of-State assets, thereby rendering moot the effectiveness of a provisional remedy and thwarting the goals of the New York State Legislature.
The amicus brief, submitted by New York State Association of Criminal Defense Lawyers (thereinafter amicus),[3] relies upon District Attorney of Queens County v McAuliffe (129 Misc 2d 416 [1985]) to support its contention that New York’s forfeiture statutes allow the People to assert jurisdiction effectively over a defendant’s out-of-State assets. In McAuliffe, a New York court issued a preliminary injunction enjoining defendants from encumbering or removing real property located in Pennsylvania allegedly purchased with the proceeds of a crime. While this court does not question the validity of such a remedy, violation of the court’s order is punishable solely by contempt — a negligible sanction to a defendant facing charges under New York’s narcotics laws.[4]
Contrary to the assertion of amicus, it is clear to this court *646 that the in personam nature of New York’s forfeiture statutes, directed against the person of the defendant, are largely ineffective in securing a defendant’s out-of-State assets.
Applying this finding to the case at bar, the prosecution cannot effectively forfeit the defendant’s Puerto Rican bank accounts under New York’s forfeiture laws. The lengthy process of obtaining a final order in New York’s civil court to allow the people to proceed against these accounts by way of a court in Puerto Rico would clearly be futile. Therefore, a claiming authority under CPLR article 13-A has no jurisdiction over funds located outside the borders of New York State.[5]
Due to the nature of New York’s in personam forfeiture statute, the New York bank account in the name of the defendant’s ex-wife, Carmen Martinez, does not fall within the jurisdiction of New York State unless she qualifies as a noncriminal defendant as defined in CPLR 1310 (10). The People contend, and the defense has not disputed, that they were unable to commence forfeiture proceedings against Ms. Martinez’s property because they could not meet their burden of proving that she was a noncriminal defendant. Therefore, this court must conclude that the prosecution could not forfeit these funds under CPLR article 13-A. Possibly fearful of money-laundering charges, the defendant has asserted no claim to or interest in this New York State property. Consequently, the bank account in National Westminster Bank in the name of Carmen Martinez falls outside the jurisdiction of New York State’s forfeiture statutes as well.
In contrast to New York State’s in personam statute, 21 USC § 881 vests the Federal courts with in rem jurisdiction[6] and has permitted the forfeiture of the proceeds of illicit narcotics transactions since 1978. The prerequisite for obtaining jurisdiction under Federal law is the seizure of the res.[7] To *647 obtain a Federal judgment of forfeiture, the Government must establish that the defendant committed crimes that provide a basis for forfeiture and that the properties specified as forfeitable are properly forfeitable. (United States v Monsanto, 924 F2d 1186, 1203 [2d Cir 1991].)[8] Although amicus contends that the Federal procedures are unconstitutional, the Federal forfeiture statutes have been held to satisfy due process requirements. (Caplin & Drysdale v United States, 491 US 617 [1989].)[9]
In comparison to New York State’s inability to seize the funds in this case, the Federal statutes provided the prosecution with an effective means of reaching the assets. The Citibank account in Puerto Rico was seized pursuant to a seizure warrant issued for various accounts on deposit. The bank account in Bronx County in the name of Carmen Martinez, unreachable under CPLR article 13-A, was also seized under title 21 of the United States Code.
This court finds that in order to meet the Legislature’s goal of "taking the profit out of crime”, a New York State prosecutor must be able to use Federal forfeiture laws to seize out-of-State assets or assets located in New York State which do *648 not fall within the purview of CPLR article 13-A.[10] Furthermore, to require the People to forfeit some of a defendant’s funds under article 13-A and the remainder under Federal forfeiture laws would place too great a burden on the prosecution and is not in the interest of judicial economy. Therefore, this court concludes that as long as a State prosecutor fully satisfies the requirements set forth below, he or she may elect to use Federal forfeiture laws in pursuing the seizure and forfeiture of a defendant’s assets.
RIGHT TO COUNSEL OF CHOICE
While allowing a State prosecutor to elect to proceed under Federal forfeiture provisions, this court also recognizes New York State’s expanded interpretation of a defendant’s Sixth Amendment right to counsel of choice.
The New York State Court of Appeals traditionally has reserved the right to afíbrd a defendant greater protections under the State Constitution than required by the United States Constitution.[11]
*649 Under Federal law, an accused is guaranteed the right to competent counsel, not necessarily counsel of choice. (See, Wheat v United States, 486 US 153 [1988]; see also, Caplin & Drysdale v United States, 491 US 617 [1989], supra.) In Wheat (supra, at 159), the Supreme Court stated: "[W]hile the right to select and be represented by one’s preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. See Monis v. Slappy, 461 U.S. 1, 13-14 (1983); Jones v. Barnes, 463 U.S. 745 (1983).”
The court in Wheat (supra) identified circumstances in which a defendant’s right to counsel of choice is limited. For example, a defendant cannot demand to be represented by an attorney he or she cannot afford. (Wheat v United States, supra, at 159.) Nor can a defendant spend criminal proceeds which are subject to Federal forfeiture statutes to finance his or her defense even if the defendant will be prevented from obtaining counsel of choice. (See, Caplin & Drysdale v United States, 491 US 617, 626, supra.)
The New York courts, however, recognize a broader Sixth Amendment right to counsel. While the Right to Counsel Clause of the NY Constitution is more restrictive than that of the Sixth Amendment of the US Constitution, the New York Court of Appeals has interpreted the NY Constitution to provide far more expansive protection to a defendant than its Federal counterpart. (People v Bing, 76 NY2d 331, 338-339 [1990]; People v Davis, 75 NY2d 517, 521 [1990]; People v Hobson, 39 NY2d 479, 483-484 [1976].) In People v Settles (46 NY2d 154, 161 [1978]), the Court of Appeals stated: "So valued is the right to counsel in this State (NY Const, art I, § 6), it has developed independent of its Federal counterpart (US Const, 6th Arndt). Thus, we have extended the protections afforded by our State Constitution beyond those of the Federal —well before certain Federal rights were recognized”.
The principle that right to counsel in New York encompas *650 ses right to counsel of choice was recognized by the New York Court of Appeals in People v Arroyave (49 NY2d 264 [1980]):
“It is certainly well established that the right to counsel, guaranteed by both the Federal and State Constitutions * * * embraces the right of a criminal defendant to be represented by counsel of his own choosing * * * As a necessary corollary to this right, a defendant must be accorded a reasonable opportunity to select and retain his counsel * * *
“This constitutional guarantee ensuring the right of a defendant to be represented at trial by counsel of his own choosing serves many critical needs * * *
"By granting a defendant a reasonable opportunity to retain counsel of his own choosing, individual rights are honored and the ultimate public concern at any criminal trial — the need to discern the truth — is best effectuated * * *
"The courts of this State have remained vigilant in their duty to ensure that a defendant’s right to retain counsel of his own choosing is protected * * * In short, courts must remain sensitive to the benefits which both the defendant and the legal process itself derive from permitting the criminally accused to obtain counsel of his own choosing, and should undertake the steps reasonably required to ensure that the defendant’s right to retain counsel is honored.” (People v Arroyave, 49 NY2d 264, 270-271, supra; see also, People v Tineo, 64 NY2d 531 [1985].)
Therefore, a State prosecutor who opts to forfeit New York State property in Federal court must respect a defendant’s right to counsel of choice as mandated by the State Constitution. Where property located within New York State is forfeited Federally in a State prosecution, the prosecutor will risk sanctions up to and including dismissal of the State prosecution unless provisions are made to satisfy New York State’s constitutional requirements.
ENFORCEMENT OF NEW YORK STATE’S CONSTITUTIONAL PROTECTIONS
It is clear that a State prosecutor cannot compel Federal courts to relinquish control over seized assets. However, the same cooperation between the Federal, State and local agencies which resulted in the creation of the Drug Enforcement Administration’s Joint Task Force must also provide for an equitable distribution of forfeited assets, or the prosecution should proceed Federally with all costs borne by the Federal Government.
*651 While some “sharing” of assets between local, State and Federal agencies may occur at present, any distribution is decided on a case-by-case basis and does not contemplate attorney’s fees. No attorneys’ fees have ever been provided for out of seized funds; and there is no expectation by this court that a prosecutor sua sponte will make provisions for a defendant to have counsel of his or her choice compensated from assets which have been forfeited. Therefore, a court order to this effect, imposing serious sanctions for noncompliance, is necessary. The imposition of such sanctions on the prosecution to prevent the abridgement of a defendant’s fundamental constitutional right to counsel of choice is well founded in New York State law. (People v Goggins, 34 NY2d 163 [1974]; Roviaro v United States, 353 US 53 [1957]; CPL 210.40, 210.20 [1] [h] [dismissal of State/Federal action is appropriate sanction where prosecution refuses to disclose identity of informant whose testimony is essential to a fair trial].)
In computing the total amount which the prosecution must ensure is made available to satisfy New York’s constitutional mandates, such funds are limited to either:
a) the total value of the defendant’s seized assets located within New York State, or
b) the amount which the court deems to be reasonable attorney’s fees in the particular case, whichever amount is lower. New York has no legal or technical right to any out-of-State funds because it cannot effectively seize them; and any seizure of in-State funds must be subject to New York’s constitutional requirements.
In each case, the court must examine the complexity of the factual and legal issues presented, estimate the potential length of the proceedings and order the People to set aside a reasonable amount from which defense counsel of choice may seek compensation. In determining a reasonable amount for attorney’s fees and expenses, the court must balance the inadequate compensation rendered to defense counsel under article 18-B, § 722-b of the County Law with the sometimes inflated and sometimes unreasonable fees expected by some private counsel in narcotics cases.[12] Any ultimate determination of this issue would be made at the end of the case, after *652 appropriate submissions of time and expenses submitted by defense counsel, and after a hearing if deemed necessary. A reasonable retainer would also be released to defense counsel as soon as possible.
If the amount allotted by the court exceeds the actual services rendered by defense counsel, for example, if the matter is disposed of pretrial, or the trial is terminated prematurely, the remaining funds should be distributed along with the defendant’s other Federally forfeited assets. If the value of the defendant’s in-State forfeited assets is insufficient to compensate counsel of choice, then defendant must accept assigned counsel.
To the extent that a defendant has elected to place his or her assets outside of New York State, the People are not obligated to obtain assets seized in Federal forfeiture proceedings to retain counsel of choice. The People’s duty to secure funds for retention of counsel of choice extends only to those funds which they could have seized under CPLR article 13-A. By placing assets outside of New York, a defendant has placed his or her assets outside the authority of the New York forfeiture laws and, therefore, outside the ambit of the New York State Constitution.
RECOGNITION OF NEW YORK STATE’S FINANCIAL INTERESTS
In addition, New York clearly has a financial interest in any funds forfeited within its jurisdiction. To allow the Federal Government to reap the rewards of an investigation funded in whole or in part by New York State funds, prosecuted by a State prosecutor, defended in some cases by State-funded legal counsel[13] and litigated in State court — all supported by New York State tax dollars — would be to disregard totally the legitimate financial interests of New York State.
The People have an obligation in every case to ensure that New York State is reimbursed for administrative expenses. Even where a defendant has placed all of his or her assets outside the State, the substantial costs associated with an investigation and ensuring litigation, including costs of County Law article 18-B representation, should also be defrayed by any Federally forfeited assets. While this is not a responsibility that the courts can monitor and/or enforce, the *653 People must recognize their commitment to the New York State taxpayers to ensure that the State is as fully compensated for its expenses as practicable. While there is some recognition of this duty at present,[14] more attention should be paid to enforcing New York State’s interests in the future.
CONCLUSION
Every New York State court has an obligation to ensure that the rights granted to a defendant by the State are not abridged in a State prosecution. The guidelines set forth above recognize the People’s right to elect the forfeiture forum as long as the defendant’s State right to counsel of choice is protected. Where a defendant’s forfeited property is located within New York State, and therefore could have been forfeited under CPLR article 13-A, the People have a duty under the State Constitution to obtain a reasonable portion of those funds so that counsel of choice may be retained.
In the instant case, the defendant has chosen to place his assets outside the control of New York State and outside its constitutional protections. The bank accounts located in Puerto Rico are not within New York State’s jurisdiction under article 13-A and the bank account in Bronx County is in the name of the defendant’s ex-wife and the defendant has not claimed it as his own. Therefore, because New York State could not forfeit these funds under New York’s forfeiture statute, this court cannot require a State prosecutor to set aside Federally forfeited funds so that defendant may retain counsel of choice in the State prosecution.

. Defense counsel are acting pro tem lest they not receive their initial retainer of $209,229.42.

. A " 'non-criminal defendant’ means a person, other than a criminal defendant, who possesses an interest in the proceeds of a crime, the substituted proceeds of a crime or an instrumentality of a crime.” (CPLR 1310 [10].)

. The court acknowledges the excellent amicus curiae brief submitted by the New York State Association of Criminal Defense Lawyers, Mark J. Mahoney, President, Margot S. Bennett, David L. Lewis, and Sheryl E. Reich on the brief.

. A conviction of an A-I felony under New York State law carries a minimum sentence of 15 years to life and a maximum of 25 years to life.

. Penal Law article 480 also provides for forfeiture of a defendant’s assets but is equally inapplicable to the facts at bar. Penal Law article 480 is an in personam statute and is therefore subject to the same limitations as CPLR article 13-A. In addition, there is no provision for the forfeiture of a noncriminal defendant’s assets.

. While an action in personam is directed against a particular individual, an action in rem is directed against a particular property, or res. Under in rem jurisdiction, "the thing in such a case is primarily considered as the offender”. (Dobbins’s Distillery v United States, 96 US 395, 400 [1877].)

. Under 21 USC § 881 (b), the Attorney General or a designee may seize property by filing a verified complaint with the clerk of the United States *647 District Court having jurisdiction over the res. The property is seized "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims” (21 USC § 881 [b]). The District Court must issue a warrant of arrest in rem for the property on a showing of probable cause to believe that the property is subject to seizure and civil forfeiture. Upon execution of the seizure warrant, the Federal authorities are required to notify a "claiming party”. To contest the seizure, such "claiming party” must file a motion contesting the seizure accompanied by a bond of $5,000 or 10% of the value of the seized assets, whichever is lower. (21 CFR 1316.75.)

. The burden is on the Government to establish that probable cause exists for the forfeiture (21 USC § 881 [d]), i.e., "reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture.” (United States v Premises & Real Prop. at 4492 S. Livonia Rd., 889 F2d 1258, 1267 [2d Cir 1989].) The burden then shifts to the claimant to establish by a preponderance of credible unrebutted evidence that the factual predicates for forfeiture have not been met by the Government. (United States v Banco Cafetero Panama, 797 F2d 1154, 1160 [2d Cir 1986].)

. See also, United States v All Funds on Deposit in any Account at Certain Fin. Insts. Held in Names of Certain Individuals (767 F Supp 36 [ED NY]) in which the Honorable Arthur D. Spatt held that the procedural safeguards and requirements set forth in United States v Monsanto (924 F2d 1186 [2d Cir 1991]) apply equally to civil forfeiture proceedings where such proceedings are based upon a related criminal action in which the claimant is the defendant.

. Amicus contends that allowing a State prosecutor to forfeit funds under Federal forfeiture statutes is a violation of the "silver platter” doctrine. (Elkins v United States, 364 US 206 [I960].) In Elkins, the United States Supreme Court held that it was unlawful for a State to seize evidence in violation of a defendant’s constitutional rights and hand that evidence on a "silver platter” to the Federal courts for prosecution. The "silver platter” doctrine is inapplicable to the facts of this case. Under CPLR article 13-A, the People cannot establish jurisdiction over either of the accounts which can be seized under the Federal provisions. Therefore, the Federal statutes are not being used to evade State constitutional mandates. Rather, the prosecution has no choice but to use the Federal statutes to seize the funds effectively.
Additionally, while amicus correctly points out that possession of the res by the Federal courts does not bar the State courts from establishing jurisdiction over the same property, this principle is applicable only where the State courts have attempted to establish jurisdiction. In this case, there has been no attempt by the State to forfeit the funds under article 13-A. Where a State has not sought forfeiture of property that has been seized under Federal forfeiture laws, the Federal court has proper jurisdiction over that property and is not required to discontinue the Federal forfeiture proceeding in favor of a nonexistent State proceeding. (See, United States v Winston-Salem/Forsyth County Bd. of Educ., 902 F2d 267, 272 [4th Cir 1990]; United States v One 1985 Cadillac Seville, 866 F2d 1142,1146 [9th Cir 1989].)

. Cases in which the Court of Appeals has granted a defendant broader rights under the State Constitution include People v Sierra (45 NY2d 56 [1978]), People v Argibay (45 NY2d 45, cert denied sub nom. Hahn-DiGuisepp v New York, 439 US 930 [1978), People v Lam Lek Chong (45 NY2d 64 [1978], cert denied 439 US 935), People v Roche (45 NY2d 78 [1978], cert *649 denied 439 US 958 [1978] [the defense of agency is recognized in State court, but no longer under Federal law]), People v Belton (55 NY2d 49 [1982] [automobile search]); People v P. J. Video (68 NY2d 296 [1986], cert denied 479 US 1091 [1987] [standard of review for search warrants under the First Amendment]), and People v Bigelow (66 NY2d 417 [1985] [New York rejects the Illinois v Gates, 462 US 213 (1983), reh denied 463 US 1237 (1983), "totality of circumstances” test]).

. In this case, while the court does not have to determine the amount which defense counsel, Meyer and Greenfield, reasonably should be compensated, the sum of $209,229.42 as an initial retainer appears to be unreasonable.

. In 1990, the total amount of fees paid to assigned counsel in Manhattan and Bronx criminal cases was $18,501,079. The amount necessary to compensate assigned counsel continues to increase as evidenced by the 1985 budget of $7,401,716.

. The Division of Criminal Justice Services is currently monitoring distribution of seized assets. Such monitoring may be the only method of enforcing this duty that exists at present.