**UNITED STATES of America,**
**Appellee,**

v.

**John A. FERBY, Darnyl Parker,**
**Defendants–Appellants.**

**Nos. 02–1506, 02–1535.**

United States Court of Appeals,
Second Circuit.

Sept. 3, 2004.

678

Kim P. Bonstrom, Bonstrom & Murphy, New York, NY, for appellant Ferby.

Mark J. Mahoney, Harrington & Mahoney, Buffalo, NY, for appellant Parker.

Robert C. Moscati, Assistant United States Attorney, United States Attorney's Office for the Western District of New York (Michael A. Battle, United States Attorney, Paul J. Campana, Assistant United States Attorney), Buffalo, NY, for Appellee, of counsel.

* Of the United States District Court for the Eastern District of New York, sitting by designation.

Present: McLAUGHLIN, SACK, Circuit Judges, and GERSHON, District Judge.*

**AMENDED SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

Defendants-appellants John A. Ferby and Darnyl Parker appeal from, *inter alia*, the district court's evidentiary rulings, jury instructions, judgments of conviction, and sentencing decisions. Inasmuch as the parties are familiar with the facts underlying this appeal, we do not recite them here.

I. Evidentiary Rulings

The appellants argue that the district court erred by admitting under Federal Rule of Evidence 404(b) the statements of Thomas Calhoun regarding alleged "prior bad acts" of Parker, and that the district court should have determined whether the statements were "probably true" and should have "look[ed] at the issue of the credibility of Calhoun's tale." Parker Br. at 180–81. However, when admitting evidence under Rule 404(b), a district court "neither weighs credibility nor makes a finding that the Government has proved [a] conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

■ The appellants argue that the district court erred in refusing to allow Parker, during his cross examination of Agent Cid, to play the taped conversations between

tween Calhoun and Parker. The tapes had not been played during direct examination of Agent Cid nor had they been introduced into evidence. The district court therefore "exercise[d] reasonable control ... [to] make the ... presentation effective for the ascertainment of truth," Fed.R.Evid. 611(a), and did not abuse its discretion, *United States v. Concepcion,* 983 F.2d 369, 391 (2d Cir.1992).

The appellants argue that the district court erred by preventing Parker from extensively questioning Agent Cid regarding the existence of a warrant for the search of the "stash house," even though Parker had no good-faith reason to believe a warrant existed. The lack of a warrant was only evidence demonstrating a conspiracy to violate civil rights and not an element of that crime. "Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts." *United States v. Katsougrakis,* 715 F.2d 769, 779 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

The appellants claim on appeal that the district court erred in refusing to provide the jury with a "requested readback of the testimony of William Parker and Reno Sayles." Parker Br. at 86. However, the jury asked for *transcripts* of that testimony. In response, the district court offered to provide to the jury readbacks of that testimony, *upon request,* because transcripts were not at that time available. The jury did not respond to this offer, and the district court did not err.

## II. Jury Instructions

The appellants argue that the district court's instruction regarding the charge

that the defendants conspired to violate civil rights (Count I) was improper because it erroneously equated an intent to convert seized funds with an intent to violate due process. Police officers who convert to private purposes funds lawfully seized from suspected criminals violate those criminals' civil rights. *United States v. McClean,* 528 F.2d 1250, 1255 (2d Cir. 1976).

The appellants claim that the district court improperly refused to instruct the jury that, in determining whether the appellants converted a "thing of value" owned by the United States, in violation of 18 U.S.C. § 641 (Count IV), (1) the United States does not own property when it relinquishes control of the funds to another person who is not subject to the direction or control of the United States, and (2) the jury should determine whether the money was owned by the United States at the time it was converted. However, even if a party voluntarily relinquishes property to police officers during a lawful seizure, the party retains an interest in the property that entitles the party "to have the status of the seized property determined by due process." *McClean,* 528 F.2d at 1256. This retained interest in the seized property is a "thing of value" under section 641. The first proposed jury instruction misstates the law, the refusal to give the second caused no prejudice, *United States v. Walsh,* 194 F.3d 37, 52 (2d Cir.1999), and the district court did not err in refusing to give the requested instructions.

Parker argues that the district court erred by refusing to instruct the jury that he could only be convicted under Count X of the indictment as an aider or abettor. Count X charged Parker with "knowingly and willfully conduct[ing] ... a financial transaction in violation of Title 18, United States Code, Sections 1956(a)(3)(A) and 2." Indictment at 21, *United States v. Parker,*

165 F.Supp.2d 431 (W.D.N.Y.2000). 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Section 2 is thus not limited to derivative liability. Moreover, "courts have encountered no 'difficulty sustaining convictions when the indictment did not specify whether the defendant was the aider and abettor or the principal.'" *United States v. Knoll,* 16 F.3d 1313, 1323 (2d Cir.1994).

Parker argues that the district court erred in refusing to instruct the jury on an entrapment defense for the narcotics conspiracy charge against Parker (Count XI). "Entrapment is an affirmative defense that requires a defendant to prove by a preponderance of the evidence the government's inducement to commit the crime and lack of predisposition on the defendant's part." *United States v. Williams,* 23 F.3d 629, 635 (2d Cir.1994). Parker has not identified any evidence convincing us that the district court abused its discretion by finding that there was no evidence of inducement by the government, *see United States v. Mayo,* 705 F.2d 62, 68 (2d Cir. 1983), and the court thus did not err in refusing to give an entrapment instruction.

Parker argues that the district court should have instructed the jury to determine who amongst the alleged coconspirators listed in the indictment (Count XI)— William Parker and Sayles—was in the narcotics conspiracy with Parker. However, Parker has demonstrated no prejudice from the district court's decision to require instead that the jury indicate whether the narcotics conspiracy involved more or less than 500 grams of cocaine. *Walsh,* 194 F.3d at 52.

### III. Sufficiency of the Evidence

■ Parker argues that there is insufficient evidence to support his conviction for conspiring to violate civil rights (Count I), in violation of 18 U.S.C. § 241, because, he claims, he did not actually violate any civil rights. Parker may be convicted of the inchoate offense of conspiracy even if the object of the conspiracy was never achieved. *United States v. Wallace,* 85 F.3d 1063, 1068 (2d Cir.1996). After a careful review of the record, we are satisfied that the evidence supports Parker's conviction for conspiracy to violate civil rights. For example, the recorded conversations between Parker and Calhoun provide substantial evidence of Parker's intent to violate civil rights. Moreover, Parker's participation in the search of the "stash house" and the theft of the jewelry contained therein supports a finding of a conspiracy to violate the right to be free from unreasonable searches and seizures. Likewise, the conversion of the funds taken from Agent White demonstrates a conspiracy to violate due process rights. *McClean,* 528 F.2d at 1256. There is also ample evidence demonstrating that, during the search of the "stash house" and the apprehension of Agent White, Parker and his colleagues acted under color of law. *Pitchell v. Callan,* 13 F.3d 545, 547–48 (2d Cir.1994).

■ The appellants contend that there is insufficient evidence to support their convictions for willful conversion of property of the United States because they believed that Agent White, posing as the Jamaican drug dealer, abandoned the money seized during his apprehension. A defendant violates 18 U.S.C. § 641 if he "know[s that the converted property] belongs to someone other than himself," *United States v. LaPorta,* 46 F.3d 152, 158 (2d Cir.1994), even if the defendant does not know that the converted property is owned by the United States, *United States v. Jermendy,* 544 F.2d 640, 641 (2d Cir.

1994) (per curiam). If Agent White had abandoned the money, it would have been owned by the Buffalo Police Department, the City of Buffalo, the State of New York, or some combination thereof. *People v. Martinez,* 151 Misc.2d 641, 574 N.Y.S.2d 467, 476 (1991). The defendants thus knew that the converted property belonged to someone else and, as noted above, the United States retained a property interest in the seized funds.

■ Parker argues that there is insufficient evidence supporting his convictions for the crimes charged in Counts V, VI, VIII, IX, and X, each of which requires a nexus with interstate commerce. Parker argues that his actions could not have had an actual impact on interstate commerce because Calhoun was a government agent and not a drug dealer. However, " '[f]actual impossibility' is no defense to the inchoate offense of conspiracy under the Hobbs Act." *United States v. Clemente,* 22 F.3d 477, 480–81 (2d Cir.1994). The defendant's intent may establish the required nexus with interstate commerce. *United States v. Fabian,* 312 F.3d 550, 555 (2d Cir.2002).

■ Parker argues that there is insufficient evidence to support his convictions under Counts V, VI, VIII, and IX for conspiring and attempting to extort money under color of right, because, he claims, he performed no official acts in exchange for money or property. "[T]he offense [of extortion under color of right] is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense." *Evans v. United States,* 504 U.S. 255, 268, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). "[T]he Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Id.* There is adequate evidence demonstrating that Parker conspired and attempted to exchange Agent White's physical liberty for his property interest in the seized money, *McClean,* 528 F.2d at 1256, and that, in exchange for the two $1000 payments from Calhoun, Parker agreed to provide police information that would help Calhoun and his alleged drug partner avoid arrest.

Parker argues that there is insufficient evidence to support his conviction for conspiring to distribute and to possess with intent to distribute narcotics because the evidence supports only a narcotics agreement with Calhoun. We conclude that the evidence, when viewed "in the light most favorable to the Government and drawing all reasonable inferences in its favor," indicates that a rational trier of fact could have found Parker guilty of a conspiracy with William Parker and Sayles. *United States v. Glenn,* 312 F.3d 58, 63 (2d Cir. 2002).

### IV. Miscellaneous

■ Parker argues that the acquittal of his alleged coconspirators requires his acquittal for the conspiracies charged in Counts I, II, and V. Inconsistent verdicts are generally not reviewable. They may, for example, be the result of jury lenity, which does not have to be provided uniformly to all codefendants. *United States v. Powell,* 469 U.S. 57, 65–66, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *accord United States v. Acosta,* 17 F.3d 538, 544–45 (2d Cir.1994); *United States v. Alvarado,* 882 F.2d 645, 654 (2d Cir.1989); *United States v. Chang An–Lo,* 851 F.2d 547, 559–60 (2d Cir.1988).

■ Parker argues that a new trial is required because the district court refused to determine the impact of negative trial publicity on individual jurors. However,

at Parker's request, the court asked the jury, as a group, if any of them had been exposed to the negative publicity. Because no juror answered in the affirmative, the district court did not abuse its discretion by declining to question the jurors individually. *United States v. Lord,* 565 F.2d 831, 838–39 (2d Cir.1977).

## V. Sentencing

### A. Parker

Parker argues that the district court erred by increasing his offense level for the narcotics conspiracy conviction pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3B1.3, which provides a two-level enhancement for abuse of a position of trust. Parker concedes that, as a police officer, he occupied a position of trust but suggests that he did not abuse that position. "Section 3B1.3 applies to convictions for conspiracy provided the district court concludes with reasonable certainty that the defendant conspired to use ... [a position of trust] significantly [to] facilitate[] the commission or concealment of the offense." *United States v. Downing,* 297 F.3d 52, 64 (2d Cir.2002) (internal quotation marks and citations omitted). The district court did not commit clear error, *United States v. Hussey,* 254 F.3d 428, 431 (2d Cir.2001), in concluding that there was a "reasonable certainty" that Parker would have used his position as a police officer to further his own drug-dealing activities.

■ Parker asserts that the district court erred by increasing his offense level pursuant to U.S.S.G. § 3C1.1, which provides a two-level enhancement for obstruction of justice. Prior to trial, Parker encouraged William and Sayles not to testify against him. Parker suggests that he was merely advising William and Sayles of their constitutional rights. " '[W]hile a witness violates no law by claiming the Fifth Amendment privilege against self-

incrimination ..., one who bribes, threatens, coerces a witness to claim it or advises with *corrupt motive* a witness to take it, can and does obstruct or influence the administration of justice.' " *United States v. Cioffi,* 493 F.2d 1111, 1119 (2d Cir.1974) (quoting *Cole v. United States,* 329 F.2d 437 (9th Cir.1964)) (emphasis added). The district court found that Parker had such a "corrupt motive," and we conclude that, on the record before us, this finding was not clearly erroneous. *United States v. Hamilton,* 334 F.3d 170, 188 (2d Cir.2003); *United States v. Williams,* 254 F.3d 44, 46 (2d Cir.2001).

Parker argues that the district court erred by increasing his applicable offense level for the narcotics conspiracy conviction pursuant to U.S.S.G. § 3B1.1(c), which provides a two-level enhancement for occupying a leadership role. Parker argues that this conviction was not supported by sufficient evidence and therefore cannot support an enhancement. As noted above, the evidence adequately supports this conviction.

Parker argues that the district court erred by refusing to grant a downward departure based on the "imperfect defense of entrapment," which Parker describes as "an entrapment claim that may not have been strong enough for a jury to accept at trial, but should ... be accounted for at sentencing as a basis to downwardly depart." Parker Br. at 161. The district court found no credible evidence of inducement, and we cannot conclude that the district court clearly erred in so finding. Parker does not suggest that a refusal to downwardly depart based on such a finding evinces a " 'mistaken belief that it lacked authority to depart.' " *United States v. Bala,* 236 F.3d 87, 91 (2d Cir. 2000) (quoting *United States v. Martin,* 78 F.3d 808, 814 (2d Cir.1996)).

*B. Ferby*

 Ferby argues that the district court erred by increasing his applicable offense level pursuant to U.S.S.G. § 3A1.3, which provides a two-level adjustment "[i]f a victim was physically restrained in the course of the offense." During sentencing, Ferby withdrew his objection to the application of this enhancement, and we therefore review for "plain error." We do not find on the record before us that the district court committed plain error. *United States v. Henry*, 325 F.3d 93, 100 (2d Cir.2003).

Ferby argues that the district court erred by refusing to decrease his applicable offense level pursuant to U.S.S.G. § 3E1.1(a), which provides a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Although Ferby admitted at trial that he failed to file the appropriate paperwork for the money seized from Agent White, the district court did not commit clear error in finding that Ferby did not accept responsibility because he "admitted only that which could not be denied under the circumstances." *United States v. Reyes*, 9 F.3d 275, 281 (2d Cir. 1993).

Ferby also asserts that the district court erred by upwardly departing by four levels for conduct for which Ferby was acquitted. "[W]ith respect to acts of misconduct not resulting in conviction, the [Sentencing Guidelines] . . . permit departures for acts that relate in some way to the offense of conviction, even though not technically covered by the definition of relevant conduct." *United States v. Kim*, 896 F.2d 678, 684 (2d Cir.1990). After careful review of the facts, we conclude that the district court did not err in finding by a preponderance of the evidence that Ferby committed the acts charged in Counts I, II, III, V and VI. *United States v. Kostakis*, 364 F.3d 45, 51 (2d Cir.2004). Moreover, the district court did not err by determining the size of the departure based on the sentence that Ferby would have received if he had been convicted of Count I. "Reference to an analogous statute is a well-established method to determine the magnitude of an upward departure." *United States v. Fan*, 36 F.3d 240, 245 (2d Cir.1994); *accord United States v. Guzman*, 282 F.3d 177, 182 (2d Cir.2002).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.