RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 09-5790

*v.*

ARTHUR SEASE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20304-001—Jon Phipps McCalla, Chief District Judge.

Argued: August 31, 2011

Decided and Filed: October 21, 2011

Before: COLE, ROGERS, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Robert C. Brooks, Memphis, Tennessee, for Appellant. Nathaniel S. Pollock, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for Appellant. Nathaniel S. Pollock, Jessica Dunsay Silver, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

COLE, Circuit Judge. Defendant-Appellant Arthur Sease, a former Memphis police officer, appeals his convictions stemming from a conspiracy to stage drug buys for the purpose of seizing drugs and money for personal gain. The jury returned guilty verdicts against Sease on forty-four counts, including violations of 18 U.S.C. § 241 (conspiracy to deprive another of their civil rights under the color of law), § 242

(deprivation of civil rights under the color of law), and § 1951 (robbery and extortion under the color of official right interfering with interstate commerce), and the district court sentenced Sease to life plus 255 years in prison. Sease challenges the sufficiency of the evidence supporting his convictions, arguing that he did not violate the rights of the participants in the staged drug buys because there was probable cause to arrest the drug dealers and seize the drugs and money. We AFFIRM the convictions.

## I. BACKGROUND

Arthur Sease was a Memphis police officer until he was fired by the department in late 2004. The jury found that Sease was the principal co-conspirator in a plan to acquire money and drugs from drug dealers for his own benefit and the benefit of his co-conspirators. Three other Memphis police officers–Antoine Owens, Andrew Hunt, and Alexander Johnson–as well as other associates and relatives of Sease, were involved in the conspiracy.

Sease's convictions are based on fourteen separate incidents. The incidents follow the same basic plan. Sease would arrange for a drug buy or a drug sell (using drugs taken in a previous incident) using a non-officer contact as the front person. As the deal was occurring, either Sease or one of his fellow co-conspirator officers would arrive at the scene to make a purported arrest and seize the money and drugs involved in the deal. The participants would then be released, and Sease and his conspirators would split the proceeds without reporting the incidents.

The first incident lays out most clearly the conspiracy's general operational plan that was followed in later incidents. In November or December 2003, Sease arranged for his cousin to set up a drug deal with Dejuan "Nard" Brooks. Acting outside of his assigned beat, Sease observed the deal in an unmarked police car while wearing plain clothes. When Brooks's SUV pulled up next to Sease's cousin's vehicle, Sease radioed for Owens to come to the scene in uniform in a patrol car. Owens approached the two vehicles with his weapon drawn and removed both Brooks and Sease's cousin from their vehicles. Operating under Sease's instructions to "make it look real," Owens roughed up Sease's cousin and placed him in the back of the patrol car. Meanwhile, Sease

searched Brooks's SUV and found a bag containing a half-kilogram of cocaine, which Sease placed in the front seat of his unmarked vehicle. Owens also seized $11,000 from Brooks, then released him without an arrest. Once Brooks left, Sease's cousin was released from Owens's patrol car, and the drugs were dropped off at a South Memphis house, where they were later used to set up another drug sale. Owens, Sease, and Officer Johnson then split the $11,000 in cash.

On February 16, 2008, a federal grand jury returned a fifty-one-count indictment against Sease. The counts and charges were:

Count 1, conspiracy against rights in violation of 18 U.S.C. § 241.

Count 2, conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846.

Twelve counts (Counts 3-14) of robbery and extortion under the color of law interfering with interstate commerce in violation of 18 U.S.C. § 1951 (the "Hobbs Act").

Eleven counts (Counts 15-25) of possession of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Twelve counts (Counts 26-37) of deprivation of rights under the color of law, in violation of 18 U.S.C. § 242.

Thirteen counts (Counts 38-50) of using a firearm in relation to the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

Count 51, money laundering, in violation of 18 U.S.C. § 1956(a).

Sease was convicted on February 5, 2009, on forty-four of the fifty-one counts, with the jury returning not guilty verdicts on Counts 12, 25, 34, 47, 50, and 51 (Count 19 was dismissed prior to trial). The district court sentenced him to life in prison plus 255 years. Sease appeals all of his convictions.

## II.  ANALYSIS

### A.

As a preliminary matter, the parties disagree as to the way the issues should be framed on appeal, and thus the corresponding standard of review.  Sease asserts that his appeal is based on a challenge to the sufficiency of the evidence presented by the government that forms the basis of the conviction.  Sease argues that the stops were not in fact violations of the civil rights of the drug dealers, and were otherwise appropriate actions in light of his status as a police officer.  Acordingly, there is no evidence to support his convictions, which are predicated on civil rights violations.

The government argues that Sease's challenge is not in fact to the sufficiency of the evidence, but rather to the jury instructions given with regard to the requirements of legal searches and seizures under the Fourth Amendment.  The jury returned a question to the district judge during deliberations, asking "[w]e the jury, want a better understanding of what is unreasonable search and seizure?" [sic]  In the Supplemental Instruction, the Judge instructed the jury "that seizure of money, drugs, or other personal property solely for the personal enrichment of an individual law enforcement officer is not a legitimate law enforcement purpose."  The government's view is that Sease's Fourth Amendment argument is in reality an objection to that instruction, as it essentially instructs the jury that Sease's actions were per se Fourth Amendment violations.

Sease is correct that his appeal is properly understood as a challenge to the sufficiency of the evidence.  The offenses for which Sease was charged and convicted are predicated on the illegality of the searches and seizures he conducted.  For example, Sease's convictions under 18 U.S.C. § 242 for deprivation of rights under the color of law require the government to show that the defendant "depriv[ed] [any person] of [the] rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ."  If Sease's actions were in fact legal, the government could not prove the deprivation of rights element of the offense, and the convictions must be overturned.

However, Sease did not properly preserve this argument for appeal. To properly preserve a sufficiency of the evidence issue for appeal, the defense must make a motion for a judgment of acquittal "at the end of the prosecution's case-in-chief and at the close of evidence." *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010) (quoting *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008)). Sease moved for a judgment of acquittal at the close of the government's case-in-chief, though it was phrased in general terms without reference to the Fourth Amendment violations. However, Sease did not renew his motion at the end of the government's rebuttal witnesses. Failing to renew the motion "constitutes a waiver of the objections to the sufficiency of the evidence." *Damra*, 621 F.3d at 494 (internal citations and quotations omitted). Therefore, Sease's challenge to the sufficiency of the evidence must be rejected unless the convictions represent a "manifest miscarriage of justice." *Id.* (internal citation and quotations omitted).

Moreover, as explained in more detail below, the district court properly concluded that the stops and searches conducted by Sease and his co-conspirators were constitutional violations. Thus, Sease's convictions are supported by sufficient evidence under any standard, let alone a "manifest miscarriage of justice" standard.

B.

For sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "This is a very heavy burden" for the convicted defendant to meet. *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011) (citation and quotations omitted). To sustain a conviction for deprivation of rights under the color of law under 18 U.S.C. § 242 (and, by extension, conspiracy to deprive rights under 18 U.S.C. § 241), the government must show that a constitutional violation has occurred. Section 242 "incorporate[s] constitutional law by reference . . ." *United States v. Lanier*, 520 U.S. 259, 265 (1997). Liability can only be imposed where "in the light of the pre-existing law the unlawfulness [under the

Constitution is] apparent." *Lanier,* 520 U.S. at 271-72 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Sease argues that this case is governed by *Whren v. United States*, 517 U.S. 806 (1996). In *Whren*, plain-clothed officers made a traffic stop on an individual who stopped for an unusually long time at a stop sign, and then dashed off at a high rate of speed. *Whren*, 517 U.S. at 808. Because the officers were working a high-drug area, they believed that individuals in the car were engaging in drug activity, but they did not have probable cause or reasonable suspicion to make a stop on that basis. *Id.* at 809. According to the petitioners in *Whren*, the police officers had improper motives, in the sense that the officers conducted a stop for the purpose of investigating drug offenses for which they did not have probable cause or reasonable suspicion, using the traffic offenses for which they did have probable cause as a pretext. *Id.* at 810-12. These improper motives, the petitioners argued, made the stop a constitutional violation. The Supreme Court rejected this approach, citing previous case law to "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id.* at 813 (citing previously, e.g., *Scott v. United States*, 436 U.S. 128, 138 (1978); *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973)). Instead, the Court stated that, "[w]ith rare exceptions," the constitutionality of the stop is based entirely on whether there is probable cause. *Id.* at 817.

Sease argues that, as in *Whren*, it is improper to consider why he and his fellow officers made the stops in question–the only question is whether there was probable cause to make the stops. There is no question that Sease believed that drugs and cash were present on the persons he stopped. After all, he arranged for the drugs and cash to be present on those individuals, and arranged for them to be in a particular location. Thus, according to Sease, his actions did not violate the constitutional rights of his victims, and thus his convictions must be overturned.

*Whren*, however, presumes that the officers are engaging in bona fide law enforcement activities when they make the stops. However improper it may be to use a traffic violation as a pretext to look for drugs, there is no question that making traffic

stops and looking for drugs are valid and appropriate law enforcement activities. It is only arguably improper if the officers lacked the required probable cause or reasonable suspicion under the specific facts of the situation. By contrast, it is inherently improper for officers to set up drug deals for the purpose of taking the money and drugs for themselves, regardless of the context. Sease's actions are improper in an entirely different way and to an entirely different degree than the actions of the officers in *Whren*.

Unlike the officers in *Whren*, Sease and his co-conspirators were not engaging in bona fide law enforcement activities. Instead, they were using the *appearance* of law enforcement activities as an element of their conspiracy. A key component of Sease's plan was to keep his activities from the attention of his superiors by not filing reports of his stops, acting outside of his assigned precinct, and failing to inform his superiors of the quantities of drugs and money seized. When the Memphis Police Department did find out about at least one of Sease's arranged stops, via a complaint from victim Reggie Brown, they investigated the complaint and swiftly removed Sease from the police force. Unlike the actions of officers in cases such as *Whren*, Sease's conduct was thoroughly and objectively illegal from start to finish.

In addition, while isolated quotations from *Whren* might support Sease's contentions, the rationale for the rule in *Whren* and related cases does not. *Whren's* holding that officer intentions are irrelevant to Fourth Amendment analysis comes out of a concern that courts are poorly positioned to engage in post hoc analysis of officer motivations, particularly in light of the snap decisions that law enforcement officers must make in stressful situations. Related cases express similar concerns. *Robinson*, the first case dealing with officer motives, created a per se rule that allowed for pat downs during an arrest because of the "danger to an officer" during custodial arrests. 414 U.S. at 234. *Devenpeck v. Alford*, similar to *Whren*, rejected the idea that an arrest must be based on conduct "closely related" to the reasons stated by the officer when making the arrest, since that would result in "[a]n arrest made by a knowledgeable, veteran officer [being] valid, whereas an arrest made by a rookie *in precisely the same circumstances* would

not." 543 U.S. 146, 154 (2004) (emphasis in original). *Brigham City v. Stuart* similarly rejected the idea that officers should make a split-second assessment of how injured the parties are in order to determine whether they could enter a home under the "emergency aid doctrine." 547 U.S. 398, 406 (2006). "[A]n officer is not like a boxing (or hockey) referee, poised to stop a bout only if it becomes too one-sided." *Id.* at 406. None of these concerns are implicated by Sease's conduct. Sease was not faced with a complex set of assessments when he made his stops—the stops were pre-planned and staged to accomplish his criminal purpose.

Allowing conviction where there is no "bona fide law enforcement purpose" does not implicate these concerns because the purposes underlying the exclusionary rule and § 242 are different. The holding in *Whren* represents a careful balance in which the exclusionary rule's goal of prospectively deterring police misconduct is outweighed by law enforcement purposes where there is objective evidence of probable cause. "[S]imply, the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." *Whren*, 517 U.S. at 814. However, this balance shifts in the context of a § 242 prosecution. Section 242 is a punitive statute designed to punish officers who willfully violate constitutional rights under color of law. The punitive purpose would be undermined were the court to allow a corrupt officer to hide behind the policy goals of the exclusionary rule. Accordingly, although for the purposes of the exclusionary rule the subjective intent of the officer is irrelevant, in the context of a § 242 prosecution, the courts may inquire whether the officer acted with a corrupt, personal, and pecuniary purpose.[1] In addition, unlike in the exclusionary rule context, the court must already inquire into the subjective intent of the officer because willfulness is an element of an offense under 18 U.S.C. § 242. Accordingly, there is no additional evidentiary burden to justify ignoring subjective intent.

---

[1]Further, a prosecution under § 242 is distinguishable from an action under 42 U.S.C. § 1983, where an objective finding of probable cause is an absolute defense to liability for a wrongful arrest claim. *See, e.g., Jackson v. Parker*, 627 F.3d 634 (7th Cir. 2010). The purpose of a § 1983 action is to compensate a plaintiff whose constitutional rights were violated. However, they should not be compensated if their arrest was "reasonable." This stands in contrast to the punitive purpose of § 242.

Finally, while there are fortunately few reported cases that deal with this level of officer misconduct, those that do exist all agree that purely illegal activities by law enforcement constitute a constitutional violation. In *United States v. Bradfield*, we considered a series of raids of crack houses by Detroit police officers. 225 F.3d 660, 2000 WL 1033022 (6th Cir. July 18, 2000) (unpublished table decision). During the course of the raids, officers would take a portion of the money, drugs, and guns for themselves, while reporting the rest for forfeiture. *Bradfield*, 2000 WL 1033022, at *1. We upheld the judgment of acquittal, via a review of the quantum of evidence supporting the individual charges against the officers. *Id.* at *4-10. However, implicit in our analysis is the premise that the actions of the officers would amount to constitutional violations, if supported by sufficient evidence.

Similarly, in *United States v. Parker*, three Buffalo police officers, along with a DEA agent, entered into an agreement with a "known drug trafficker" to arrange a meeting with a more prominent "Jamaican drug dealer." 165 F. Supp. 2d 431, 441 (W.D.N.Y. 2001). The plan was for the officers to rob the drug dealer's safe house and divide the proceeds from the robbery between themselves, as well as detain the drug dealer and take cash and drugs off his person. In truth, the "Jamaican drug dealer" was an FBI undercover agent and the officers' contact was an FBI confidential informant. *Id.* at 442-43. The officers, citing *Whren*, advanced similar arguments to those of Sease, claiming that they had probable cause to detain the purported drug dealer. *Id.* at 453. The court rejected these arguments, stating "[w]illful conduct taken by officers with the specific intent to violate rights made specific by the provisions of the Constitution or decisions of the courts interpreting them will support a conviction under § 242." *Id*. at 454. The Second Circuit affirmed all of the convictions of the officers in an unpublished opinion. *United States v. Ferby*, 108 F. App'x 676 (2d Cir. 2004).

Finally, in *United States v. Contreras*, a Laredo police officer arrested a woman, raped her, and attempted to kill her to avoid having her testify against him. 134 F. Supp. 2d 820, 823 (S.D. Tex. 2000). On habeas review, Contreras argued that his stop was proper pursuant to a provision in federal law authorizing municipal police officers to

make stops based on reasonable suspicion that the detainee is an illegal alien, and thus his 18 U.S.C. § 242 conviction should be overturned. *Id*. at 825. The district court dismissed Contreras's contention stating "Contreras did not arrest [the victim] because he had probable cause to believe she was an illegal alien; he arrested her so he could rape her." *Id.*

For these reasons, where, as here, there is clear evidence that the officers were not engaged in bona fide law enforcement activities, but instead acted with a corrupt, personal, and pecuniary interest, the officers violate the civil rights of those that are stopped, searched, or have their property seized. Therefore, Sease deprived those that he targeted of their constitutional rights, and thus his convictions under 18 U.S.C. §§ 241 and 242 are supported by sufficient evidence.

## C.

Sease's arguments with regard to his convictions on the non-civil rights counts are derivative of his arguments on the civil rights counts. He contends because he had probable cause to make the stops in question, he similarly had the right to perform other law-enforcement related activities at the stop that form the basis of the other convictions. For example, Sease argues that his convictions for conspiracy to possess controlled substances with intent to distribute (21 U.S.C. § 846–Count 2) and possession with intent to distribute a controlled substance (21 U.S.C. § 841(a)(1)–Counts 15-24) must be overturned because Sease had the right to possess the drugs in question pursuant to the valid stops. However, as discussed above, Sease did not engage in bona fide law enforcement activities, and thus he had no legitimate reason to possess the drugs. Therefore, those convictions are supported by sufficient evidence.

Similarly, Sease argues that his convictions for violating the Hobbs Act in disrupting interstate commerce by robbing the drug dealers caught in his staged drug buys (18 U.S.C. § 1951–Counts 3-11, 13, and 14) should be overturned. Sease concedes that robbing drug dealers is a proper basis for conviction under the Hobbs Act. *See, e.g. United States v. Ostrander*, 411 F.3d 684, 692 (6th Cir. 2005) (unpublished portion) ("[A]ny argument that the Hobbs Act, or Congress's Commerce Power . . . does not

reach robberies that disrupt rather than promote illegal trafficking in drugs is foreclosed by the case law.") (quoting *United States v. Marrero*, 299 F.3d 653, 653-54 (7th Cir. 2002)).  Again, Sease claims that his status as a police officer and the presence of probable cause to make the arrests and seizures means that he did not in fact rob the drug dealers, and thus the convictions are improper.  As the arrests and seizures were not in fact valid law enforcement actions, this argument fails.

Finally, Sease argues that his convictions for using or carrying a firearm during and in relation to the commission of drug trafficking (18 U.S.C. § 924(c)–Counts 38-46, 48, and 49) must be overturned because he was not engaged in drug trafficking, but instead valid arrests and seizures.  These arguments fail as well for the reasons discussed above.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the convictions of Arthur Sease.